The CROWELL CORPORATION, a Corporation of the State of New York, Plaintiff,

v.

TOPKIS CONSTRUCTION COMPANY, a Corporation of the State of Delaware, et al., Defendants.

Superior Court of Delaware, New Castle.

June 11, 1971.

Francis J. Trzuskowski, and Jacob C. Kellem, of Connolly, Bove & Lodge, Wilmington, for plaintiff.

Arthur F. DiSabatino, Wilmington, for Clarence Burris & Sons, Inc.

James P. Collins, Wilmington, for Joseph J. Nolan, trading as J. J. Nolan and Son.

## OPINION

CHRISTIE, Judge.

The moving parties are subcontractors. Plaintiff is the owner of the building on which the moving parties worked as subcontractors. In this suit plaintiff has sued the general contractor, Topkis Construction Company, and the architect, Howard R. Greenhouse, for damages arising from alleged defects in a building which is a combined plant, warehouse and office building. But plaintiff also included as defendants a number of subcontractors hired by the general contractor and not by plaintiff. Plaintiff had no direct contractual relationship

with the moving defendants, but sues them in this tort action on allegations that they negligently breached the provisions of their contract with the general contractor and failed to do a workmanlike job thereby creating a defective building which was dangerous. No dramatic accident or collapse has taken place and no person has suffered physical injury on account of any of the alleged negligence but plaintiff alleges that very substantial financial loss will be incurred in correcting the defects.

The moving parties seek summary judgment in their favor as the basis that as subcontractors they cannot be held liable in a tort action for mere pecuniary loss alleged to have been caused by their negligence in the absence of the creation by them of a dangerous condition which results in accident, explosion or collapse. They contend in effect that plaintiff must look to the general contractor or others who had general responsibility for the construction for any loss suffered by way of mere pecuniary loss arising from plaintiff's failure to get what the general contractor had promises to supply.

Tort liability for the manufacture of defective products which cause an accident and physical injury to a person who has no contractual relationship with the manufacturer has been found to exist in almost all jurisdictions since the decision in MacPherson v. Buick, 217 N.Y. 382, 111 N.E. 1050 (1916). Liability in such cases depends in large part upon the peril to others which results in an accident caused by the defective or negligent work.

The MacPherson theory of tort liability has been extended to protect those suffering property damage as a result of an accident, collapse or explosion caused by faulty manufacture or construction. Tort liability in this category has been recognized in Delaware as extending to contractors and by inference to subcontractors. Hunter v. Quality Homes, 6 Terry 100, 68 A.2d 620 (Superior Ct. 1949).

There is a third category of situations where tort liability has generally been held not to exist. In this category are cases where no accident, collapse or explosion has yet taken place and damages are sought because of the pecuniary losses suffered on account of the negligent workmanship. In these cases a dangerous condition is said to have been created which demands correction but plaintiff seeks to make the correction at defendants' expense before a catastrophe of some kind takes place.

Plaintiff here alleges in effect that the faulty workmanship of the moving defendants creates a dangerous condition in that the walls may collapse. Plaintiff contends that recovery for the cost of correcting this condition and other incidental expenses should be allowed now rather than after dramatic property damage or an injury takes place.

From a social viewpoint there is much to be said in favor of the approach taken by plaintiff but the case law does not support plaintiff's position. Furthermore, in the case at Bar plaintiff apparently used the building for more than four years before it decided that the condition was so dangerous as to require prompt correction. It is clear then that the loss here sustained comes not so much from a dangerous condition as it does from poor workmanship which required eventual correction. In any event plaintiff's duty to correct a dangerous condition on its business property is not dependent on plaintiff's right to sue a subcontractor for any part the subcontractor may have had in creating the condition.

Before plaintiff can recover from subcontractors under the circumstances here present for the expenses incurred in correcting the defects in the building and for plaintiff's other pecuniary losses incurred on account of the moving defendants' alleged negligence, the Court must rule that recovery is available in Delaware in cases falling within the third category listed above. No Delaware cases have hereto-

fore permitted tort recovery in this category.

The great weight of authority does not yet permit tort recovery under the circumstances here present in the absence of physical injury to a person or dramatic incident such as accident, collapse or explosion. *Prosser,* after discussing cases where recovery is allowed as an outgrowth of the *MacPherson* case, *supra,* states:

> "Where, however, there is no accident or tangible damage, and the only loss is a pecuniary one, through loss of use of the chattel or the cost of repairing it, the Courts have adhered to the rule * * * that purely economic interests are not entitled to protection against mere negligence, and so have denied recovery". Prosser, Law of Torts, 3rd Ed. 1964.

The leading case cited by Prosser and others for this rule is Trans World Airlines v. Curtiss-Wright Corp., 1 Misc.2d 477, 148 N.Y.S.2d 284 (N.Y.1955). In that case, TWA had bought approximately 55 airplane engines from the defendant. Two airplane crashes occurred. TWA sued the defendant, a subcontractor which supplied the plane engines, for damages resulting from those crashes based upon negligent manufacture of airplane engines, and also for damages based upon negligent manufacture of 55 additional airplane engines which had not been involved in crashes, but which were merely defective. The Court squarely faced the issue that is raised in this case, and stated:

> Until there is an accident, there can be no loss arising from breach of this duty, i. e., as a result of negligence (as distinguished from warranty). "Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted." [citation omitted]

> The damage asserted by TWA is for replacement cost of allegedly inferior engines—a matter of qualitative inadequacy in a product purchased from Lockheed, a proper subject for a claim of breach of warranty, pure and simple. It is true that when the engines "failed to operate", the planes became "imminently dangerous"; but the danger was "averted". There was no accident. The malfunctioning of the engines had not yet turned into a misadventure.

> TWA was not without remedy. Until an accident attributable to a defective engine happened, its only remedy was to hold Lockheed, the seller, for breach of warranty. It is only when the danger inherent in a defectively made article causes an accident that a cause of action against the manufacturer also arises.

> If the ultimate user were allowed to sue the manufacturer in negligence merely because an article with latent defects turned out to be bad when used in "regular service" without any accident occurring, there would be nothing left of the citadel of privity and not much scope for the law of warranty. There seems to me to be good reason for maintaining that, short of an accident, the citadel should be preserved. Manufacturers would be subject to indiscriminate lawsuits by persons having no contractual relations with them, persons who could thereby escape the limitations, if any, agreed upon in their contract of purchase. Damages for inferior quality, per se, should better be left to suits between vendors and purchasers since they depend on the terms of the bargain between them.

See also A. J. P. Contracting Corp. v. Brooklyn Builders Supply Co. (N.Y.1939), 171 Misc. 157, 11 N.Y.S.2d 662, affirmed without opinion 258 App.Div. 747, 15 N.Y.S.2d 424; Id. 283 N.Y. 692, 28 N.E. 2d 412.

I hold that the rule stated in these authorities correctly states the law as it applies to this case.

The motions of each of the moving parties is granted. It is so ordered.